## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

JACK A. SMITH,

                Plaintiff,

      v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

            Defendant.

CIVIL ACTION NO.: 2:21-cv-42

## O R D E R

      Plaintiff contests the decision of Administrative Law Judge Craig R. Petersen ("the ALJ"

or "ALJ Petersen") denying his claim for Disability Insurance Benefits.  Plaintiff urges the Court

to reverse the ALJ's decision.  Doc. 20 at 20.  Defendant asserts the Commissioner's decision

should be affirmed.  Doc. 25 at 24.  For the following reasons, the Court **AFFIRMS** the

Commissioner's decision.  Additionally, the Court **DIRECTS** the Clerk of Court to **CLOSE** this

case and enter the appropriate judgment of dismissal.[1]

## BACKGROUND

      Plaintiff filed an application for Period of Disability and Disability Insurance Benefits on

June 19, 2018.  R. 15.[2]  On October 1, 2020, ALJ Petersen held a telephonic hearing, at which

---

[1]      Both parties have consented to plenary review by the undersigned.  Doc. 17.

[2]      A transcript of the entire proceedings before the Social Security Administration appears at
Document Numbers 19-1 through 19-7.  Although the transcript is broken into multiple PDF documents,
each with its own CM/ECF docketing number, the transcript bears individual page numbers that run
sequentially through the entire transcript.  Record citations in this Report (identified with "R.") are to the
individual transcript page numbers.  For efficiency, no reference to the CM/ECF docketing number or the
respective PDF page numbers is provided here.

Plaintiff appeared and testified, represented by counsel.  Id.  Janice L. Bending, a vocational

expert, also appeared at the hearing.  Id.  ALJ Petersen denied Plaintiff's claims after the hearing

in a decision issued on October 20, 2020.  R. 25.  The Appeals Council denied Plaintiff's request

for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

     Plaintiff, born on July 31, 1970, was 47 years old at the time of the alleged onset date and

50 years old at the time of the ALJ's decision in 2020.  R. 24.  He has a high school diploma.

R. 24.  Plaintiff's past relevant experience was his work as a log truck driver, a dump truck

driver, and a cabinet installer.  Id.

## DISCUSSION

### I.    The ALJ's Findings

     Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

     The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004), *abrogated by regulation on other grounds, as recognized in* Jones v. Soc. Sec. Admin., No. 22-10507, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he can adjust to other work in the national economy, considering his age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since his alleged onset date, June 19, 2018. R. 17. At step two, ALJ Petersen determined Plaintiff had the following severe impairments: lumbar spine degenerative disc disease; cervical spine degenerative disc disease status post fusion; and bilateral carpal tunnel syndrome. Id. The ALJ also determined Plaintiff had non-severe medical impairments, including tobacco abuse, hypertension, and obesity. R. 18.

At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment. R. 18. The ALJ found Plaintiff has the residual function capacity ("RFC") to perform light work with the following exceptions: push or pull up to 10 pounds occasionally; stand/walk up to six of eight hours and sit up to six of eight hours with normal breaks; occasional stair and ramp climbing, but no ladders or scaffolds; frequent balance; occasional stoop, kneel, crouch and crawl; occasional overhead reaching and use of foot controls; frequent handle, finger, and feel; no concentrated exposures to cold, wetness, and vibration; and no unprotected heights or other hazards. R. 19. At the next step, the ALJ determined Plaintiff could not perform his past relevant work. R. 24. The ALJ concluded at the fifth and final step Plaintiff could perform jobs such as a marker, mail sorter, and routing clerk, all of which exist in significant numbers in the national economy. R. 25.

## II.    Issues Presented

Plaintiff asserts the ALJ's RFC determination is unsupported by substantial evidence because: (1) the ALJ failed to properly evaluate medical opinion evidence consistent with Agency authority and Eleventh Circuit precedent; and (2) the ALJ and Appeals Council derived their authority from a Commissioner who was not constitutionally appointed.

### III.    Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence that a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision.  Wiggins v. Schweiker,

679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.    Whether the ALJ Appropriately Considered the Medical Opinion Evidence

Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence from William Choisser, MD, Nishi Agarwal, MD, and the state agency examiners.  Doc. 20 at 5–6. The precise nature of Plaintiff's challenge is unclear, but it appears Plaintiff argues the ALJ failed to adequately address the "consistency" and "supportability" factors under 20 C.F.R. § 416.920c as to this evidence and the ALJ should have addressed the other factors in 20 C.F.R. § 416.920c when considering this evidence.  Doc. 20 at 8, 18.  The Commissioner argues the ALJ properly considered the supportability and consistency of the medical opinions and came to conclusions supported by substantial evidence.  Doc. 25 at 8–9.

### A.    Legal Standard

An ALJ looking at medical opinions "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 416.920c(a); see Works v. Saul, No 4:19-CV-1515, 2021 WL 690126, at *15, 24 (N.D. Ala. Feb. 23, 2021).[3] Instead, "when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider those medical opinions . . . using the factors listed . . . the most important factors . . . [being] supportability . . . and consistency."  20 C.F.R. § 416.920c.  The controlling Regulation provides some guidance to ALJs on the "supportability" and "consistency" factors.  20 C.F.R. § 416.920c(c)(1)–(2).  "Supportability" is a measure of how much a medical opinion is supported

---

[3]    On January 18, 2017, the Social Security Administration substantially revised the Regulations governing how the Commissioner considers medical evidence, including medical opinions.  See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017).  Those revisions apply to claims filed on or after March 27, 2017, and are, therefore, applicable in this case.  Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

by objective medical evidence and explanations provided by the medical source giving the opinion.  <u>See</u> 20 C.F.R. § 416.920c(c)(1).  "Consistency" is a measure of how consistent the medical opinion is with evidence from other sources (medical and nonmedical).  See 20 C.F.R. § 416.920c(c)(2).  Opinions that have a high degree of "supportability" and "consistency" should be treated as more persuasive.  20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ must articulate how supportability and consistency "were considered for a medical sources opinion, but an ALJ is not required to articulate consideration of the remaining factors."  <u>Anthony v. Kijakazi</u>, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021) (citing 20 C.F.R. §416.920c(b)(2) and <u>Uresi v. Comm'r of Soc. Sec.</u>, No. 2:20-CV-367, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021)).  However, if the ALJ finds two or more medical opinions "about the same issues are both equally well-supported and consistent with the record, but are not exactly the same," the ALJ will articulate how he considered the other most persuasive factors for those medical opinions.  20 C.F.R. § 416.920c (b)(3).  The ALJ must "provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis."  <u>Works</u>, 2021 WL 690126, at *15 (quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011)); <u>see</u> <u>Jackson v. Soc. Sec. Admin., Comm'r</u>, 779 F. App'x 681, 684 (11th Cir. 2019).  As with all conclusions, the ALJ's conclusions regarding medical source opinions must be supported by substantial evidence in the record.  <u>Buckwalter v. Acting Comm'r of Soc. Sec.</u>, 5 F.4th 1315, 1320 (11th Cir. 2021) (citing <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158 (11th Cir. 2004)).[4]

---

[4]        In revising the Regulations to remove the treating source rule, the Social Security Administration explained, "[U]nder the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether *substantial evidence* supports our final decision[.]"  Revisions to Rules Regarding the Evaluation of Medical

### B.      Dr. Choisser

Dr. Choisser opined Plaintiff "can work for two hours a day, three days a week" and can "sit about two hours total and stand/walk about two hours total."[5]  R. 579.  Dr. Choisser further opined Plaintiff would "need a job that permits shifting positions as will from sitting, standing, or walking" and would need to take "unscheduled breaks during an eight-hour working day, every hour for five to ten minutes."  Id.  Dr. Choisser found Plaintiff could "occasionally lift and carry less than 10 pounds" and "rarely lift and carry 10 pounds" in a competitive work situation. R. 580.  Dr. Choisser determined Plaintiff "would be off task 25 percent or more in a typical eight-hour workday."  R. 578.  Dr. Choisser also estimated Plaintiff was "likely to be absent from work more than four days per month as a result of his impairments."  R. 580.

In evaluating Dr. Choisser's opinion, the ALJ found the following:

> The opinion is not persuasive.  Although Dr. Choisser's examination findings included substantial lower extremity strength deficit, he did not provide sensory findings and he relies too heavy on the claimant's subjective allegations within the records, discussed above.  Additionally, his opinion is inconsistent with the diagnostic studies and generally normal physical examination findings of record, which include full bilateral lower extremity strength and intact lower extremity sensory, discussed above.

R. 23 (citations omitted).  Given the ALJ found Dr. Choisser's opinions unpersuasive, the ALJ was only required to discuss the supportability and consistency of the opinions and was not required to address the remaining three factors set out in the Regulations.  See 20 C.F.R. § 416.920c(b)(3).

---

Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added).  Accordingly, nothing in the revised Regulations alters the requirement the ALJ's decisions be supported by substantial evidence.

[5]      Dr. Choisser's opinion partially consists of a completed Physical RFC Questionnaire.  As a result, some of the quoted language is made up of questions on the form to which Dr. Choisser answered "yes."

The ALJ appropriately discussed the consistency of Dr. Choisser's opinion with other objective medical evidence in the record.  In particular, the ALJ explained Dr. Choisser's recommendations were inconsistent with examinations in the record by two other doctors that showed full bilateral lower extremity strength and intact lower extremity sensory findings.[6] R. 437, 498–99.

Supportability, as that term is used in 20 C.F.R. § 416.920c, refers to how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the opinion.  Even though the ALJ did not expressly use the term "supportability," it is clear the ALJ considered whether Dr. Choisser's opinions were supported by objective medical evidence and explanations provided by Dr. Choisser.  See 20 C.F.R. § 416.920c(c)(1).  In discussing Dr. Choisser's opinions, the ALJ cited to exhibits containing the doctor's opinion and made specific references to Dr. Choisser's examination.  The ALJ also specifically found the opinion about the substantial lower extremity strength deficit unsupported because Dr. Choisser did not provide any sensory findings and relied heavily on Plaintiff's subjective complaints.  The ALJ adequately articulated his consideration of the supportability prong for Dr. Choisser's opinions.

Furthermore, the ALJ's conclusions on supportability and consistency are supported by substantial evidence.  Plaintiff regularly showed normal sensory function and reflexes in examinations over several years.  See R. 371, 418, 504.  Extremity strength tests performed in late 2017 showed full strength in the lower extremities.  R. 538.  During the same examination, the straight leg raise test was performed, which came out negative on both left and right sides.

---

[6]    These other doctors did not offer an opinion on Plaintiff's ability to work, and Plaintiff does not challenge their findings.

Id.  Thus, substantial evidence supports the ALJ's conclusion Plaintiff's functional capacity is not as limited as Dr. Choisser opined.

Plaintiff raises other specific challenges to the ALJ's conclusions.  First, Plaintiff argues the ALJ erred in concluding Dr. Choisser's opinion was unpersuasive partly because Dr. Choisser failed to provide sensory findings for Plaintiff.  Plaintiff argues this was error because there is no Agency authority on the probativeness of sensory findings (or the absence of such findings).[7]  Doc. 20 at 17.  Plaintiff argues the ALJ engaged in "doctor playing" when he criticized Dr. Choisser's failure to provide sensory findings.  However, the worksheet Dr. Choisser completed for the Disorders of the Spine Listing specified Plaintiff's motor loss must be accompanied by sensory or reflex loss.  See R. 582.  Dr. Choisser answered yes to this question but failed to provide any sensory test results to support the conclusion.  Id.; see also R. 594.  The ALJ did not err by acknowledging the absence of sensory findings in assessing Dr. Choisser's opinion.

Second, Plaintiff argues the ALJ should not have discounted Dr. Choisser's opinion for the stated reason that Dr. Choisser "relies too heavily on [Plaintiff's] subjective allegations".  Doc. 20 at 17–18.  Plaintiff asserts the ALJ had no basis in the record to assume Dr. Choisser relied on any of Plaintiff's subjective complaints.  Id. at 18.  Plaintiff also argues nothing exists in the record to show Dr. Choisser actually did rely on Plaintiff's subjective complaints.  Id.

Plaintiff's arguments are unconvincing.  The ALJ did not reject Dr. Choisser's opinion solely because he relied too heavily on Plaintiff's subjective complaints—the ALJ also noted a

---

[7]        The two opinions Plaintiff cites, Marbury v. Sullivan, 957 F.2d 837, 840–41 (11th Cir. 1992), and Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982), do not demonstrate the ALJ's reference to a lack of sensory findings was improper.  Both decisions merely support the general proposition an ALJ cannot substitute his judgment of the claimant's condition for that of the medical and vocational experts.  Freeman, 681 F.2d at 731.  The ALJ's conclusions must be supported by substantial evidence and, in this case, they are.

lack of objective medical evidence to support for the opinion Plaintiff had substantial lower extremity strength deficit.  R. 23 ("Although Dr. Choisser's examination findings included substantial lower extremity strength deficit, he did not provide sensory findings . . . ."). Additionally, the ALJ had an adequate basis to say Dr. Choisser improperly relied upon Plaintiff's subjective complaints.  Dr. Choisser completed an RFC questionnaire and a consultative examination report.  R. 577–82, 593–94.  In examining the two reports, Dr. Choisser noted Plaintiff had flexion strength in the left thigh of 1/5 and in the right thigh of 2/5.  R. 594. He also noted Plaintiff had extension strength in both lower legs of 3/5.  Id.  However, these are the only objective medical evidence of Plaintiff's leg strength in Dr. Choisser's reports.  In contrast, Dr. Choisser provides numerous quotes from Plaintiff's subjective reports.  See, e.g., id. ("He falls frequently because his left leg gives out . . . he cannot stand for more than 30 minutes at a time before his left leg starts to shake.").  Based on Dr. Choisser's reports, the ALJ had an adequate basis to conclude Dr. Choisser relied heavily on Plaintiff's subjective reports as opposed to Dr. Choisser's own objective medical evidence.  Additionally, even though Dr. Choisser does provide some physical examination evidence, indicating Dr. Choisser did not rely entirely on Plaintiff's subjective complaints, "the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision."  Grech v. Kijakazi, Case No. 8:20-cv-1254, 2022 WL 485111, at *4 (M.D. Fla. Feb. 17, 2022) (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983))

Plaintiff cites to Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194 (9th Cir. 2008), as support for why it was error for the ALJ to reject Dr. Choisser's opinion due to reliance on Plaintiff's subjective allegations.  But Ryan is not applicable here.  First, Ryan is not controlling in this Circuit.  Second, Ryan was decided under previous Regulations which required ALJs to assign

different weights to medical opinions depending on whether source was a treating physician or some other provider.  Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).  The Ryan court concluded the ALJ in that case erred by rejecting an examining doctor's opinion because the opinion was based too heavily on the claimant's subjective complaints.  The Ryan court determined this was not a "clear and convincing reason supported by substantial evidence necessary to reject the testimony of an examining doctor."  528 F.3d at 1199.

The conclusions in Ryan were based on the demanding standard required for discounting the opinion of an examining doctor under the old Regulations—namely, that an ALJ needed to articulate a "clear and convincing reason" to discount an examining doctor's opinion.  The new Regulations, which apply in this case, eliminated this requirement.  20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").  The new Regulations only require the ALJ to evaluate the supportability and consistency of medical opinions and articulate those considerations and for the conclusions to be supported by substantial evidence.  Thus, Ryan provides no support for Plaintiff's position.

Even if the ALJ lacked an adequate basis to say Dr. Choisser relied too heavily on Plaintiff's subjective allegations, this alleged error would not require remand.  The ALJ articulated his evaluation of the consistency and the supportability of Dr. Choisser's opinion, reasons that are independent from the ALJ's reference to Dr. Choisser's over-reliance on Plaintiff's subjective complaints.  The ALJ's passing remark about Dr. Choisser's over-reliance on subjective complaints is, thus, immaterial since the ALJ would have found Dr. Choisser's opinion unpersuasive regardless.

Finally, Plaintiff asserts Dr. Choisser, and all the other physicians, limited Plaintiff to standing/walking for two hours in an eight-hour workday, which was more limited than the RFC adopted by the ALJ.  Doc. 20 at 16.  Plaintiff argues the ALJ erred by failing to build a "logical bridge" between the objective medical evidence and his rejection of every physician's stand/walk limitation when he found Plaintiff could stand/walk for six hours in an eight-hour workday.  Id. (citing McGilvery v. Colvin, No. 8:12-cv-1933, 2013 WL 5408450 (M.D. Fla. Sept. 25, 2013)). This argument is unconvincing.  The ALJ was not required to explicitly explain why he rejected the stand/walk limitation of every doctor—he was only required to consider the supportability and consistency of each opinion.  The ALJ adequately explained why he found Dr. Choisser's opinion was unpersuasive by articulating specific examples in the record that demonstrated the opinion was unsupported or inconsistent.[8]  And the ALJ's adopted RFC determination is supported by substantial evidence.  The ALJ, not a physician, is charged with determining the RFC based on a review of the record.  See 20 C.F.R. §§ 416.945(a)(3), 404.1546(c); see also Ross v. Kijakazi, CV420-12, 2021 WL 4188066, at *2 (S.D. Ga. Sept. 1, 2021) ("[T]he ALJ can distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.") (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)).  Absent some other error, remand is not required where an ALJ's factual conclusions are supported by substantial evidence.  Dyer, 395 F.3d at 1210. The ALJ appropriately determined Dr. Choisser's opinion was unpersuasive as required under the Regulations, and this conclusion was supported by substantial evidence.

The ALJ did not err in considering Dr. Choisser's opinion.  The Court denies this enumeration of error.

---

[8]     As explained below, the ALJ adequately explained his consideration of the supportability and consistency of opinions offered by Dr. Agarwal and the state agency examiners.

C.      Dr. Agarwal

Dr. Agarwal opined, "[I]n a normal work[day] of 8 hours [Plaintiff] is able to sit, stand,

walk up to 2 hours with periods of rest of 15 min[utes] after walking for 15 min[utes]."[9]  R. 441.

In evaluating Dr. Agarwal's opinions, the ALJ concluded:

> The opinion is partially persuasive.  Dr. Agarwal had the opportunity to examine
> the claimant, and the opinion regarding reaching is consistent with the claimant's
> cervical spine imaging studies and fusion, as well as his own observations of
> reduced neck and bilateral shoulder range of motion.  However, the remainder of
> the opinion is not consistent with the diagnostic studies and generally normal
> physical examination findings of record, which include full bilateral lower
> extremity strength and intact lower extremity sensory, discussed above.  Further,
> his opinion reflects over-reliance on the claimant's subjective report of
> limitations.

R. 23 (citations omitted).[10]  Plaintiff argues the ALJ failed to properly consider Dr. Agarwal's

opinions.

The ALJ appropriately discussed the consistency of Dr. Agarwal's opinions with other

objective medical evidence in the record.  The ALJ considered Dr. Agarwal's opinions that

Plaintiff is only able sit, stand, or walk for 2 hours per workday and required 15-minute breaks

after walking for 15 minutes.  The ALJ determined these opinions were inconsistent with

examinations in the record conducted by two other doctors, where those other examinations

showed Plaintiff had full bilateral lower extremity strength and intact lower extremity sensory

function.  R. 437, 498–99.

As for supportability, though the ALJ does not actually use the word "supportability" in

his analysis, it is clear the ALJ considered the supportability of the opinion.  In considering Dr.

---

[9]      Dr. Agarwal also opined Plaintiff would have "trouble reaching" in response to a question about
the coordination of upper extremities.  R. 438.  The ALJ included a reaching limitation in Plaintiff's RFC.
Plaintiff does not raise any challenge regarding Dr. Agarwal's opinion on reaching or the ALJ's
consideration of that opinion.

[10]     The ALJ refers to Dr. Agarwal with "he" and "him" pronouns.  However, the Court understands
Dr. Agarwal is a woman, so Dr. Agarwal is referred to by "she" and "her" pronouns in this Order.

Agarwal's opinions about Plaintiff's sit/stand/walk limitations and need for breaks after walking, the ALJ discussed Dr. Agarwal's over-reliance on Plaintiff's subjective report of his limitations.[11]  R. 23.  The ALJ's supporting citations to Dr. Agarwal's opinion and specific references to her examination shows the ALJ considered how much Dr. Agarwal's opinion was supported by objective medical evidence and explanations provided by Dr. Agarwal.  See 20 C.F.R. § 416.920c(c)(1).[12]  The ALJ's articulation of supportability was, therefore, adequate.

Furthermore, the ALJ's conclusions are supported by substantial evidence.  Plaintiff has regularly shown normal sensory function and reflexes in examinations over several years.  See R. 371, 418, 504.  Additionally, extremity strength tests performed in late 2017 showed full strength in the lower extremities.  R. 538.  During the same examination, the straight leg raise test was performed, which came out negative on both left and right sides.  Id.  Thus, substantial evidence supports the ALJ's conclusion Plaintiff could function beyond the limits of Dr. Agarwal's opinion.  The ALJ did not err in considering Dr. Agarwal's opinion.

---

[11]    Plaintiff argues dismissing Dr. Agarwal's findings because she "relies too heavily on the claimant's subjective allegations" was error.  Doc. 20 at 17–18.  This argument is unpersuasive for Dr. Agarwal for same reasons discussed above regarding Dr. Choisser, supra § IV.B.

[12]    Plaintiff seems to argue the ALJ erred by not considering the other factors in 20 C.F.R. § 416.920c(c).  It appears Plaintiff only advances this argument on the assumption the ALJ came to the incorrect conclusion on supportability and consistency for Dr. Agarwal's and the state agency examiners' opinions.  Doc. 20 at 18.  In other words, Plaintiff argues the ALJ should have found Dr. Agarwal's opinion (and the opinions of the state agency examiners) supported and consistent, as those terms are used in the Regulations, and as a result, the ALJ also should have considered the other factors in § 416.920c(c).  Plaintiff's argument is not consistent with the requirements of § 416.920c(c).  Regardless, I have already determined the ALJ adequately considered and addressed the supportability and consistency of these opinions.

### D.      State Agency Examiners

The state agency examiners opined Plaintiff would be able to perform sedentary work[13]

with 2 hours stand/walk, with occasional bilateral overhead reaching, frequent handling and

fingering bilaterally, frequent left feeling, and postural and environmental limitations.[14]  R. 77,

97–98, 116–15.  In evaluating the opinion, the ALJ concluded:

> The opinions are partially persuasive.  The medical consultants have substantial
> experience applying Social Security disability law and policy, and their opinions
> regarding sitting, reaching, manipulations, and postural and environmental
> limitations are consistent with the evidence at the time of their review.  However,
> their opinions are not based upon a full review of the records, and they did not
> have the opportunity to examine the claimant.  Further, their opinions regarding
> stand/walk limited to 2 hours is inconsistent with the diagnostic studies and
> generally normal physical examination findings of record, which include full
> bilateral lower extremity strength and intact lower extremity sensory, discussed
> above.

R. 22.

The ALJ rejected the state agency examiners' opinion that Plaintiff was limited to two

hours of standing or walking.  In doing so, the ALJ appropriately discussed the consistency of

the state agency examiners' opinions with other objective medical evidence in the record.  The

ALJ found the examiners' stand/walk opinion to be inconsistent with examinations in the record

by two other doctors that showed full bilateral lower extremity strength and intact lower

---

[13]      In his opinion, the ALJ states the state agency examiners limited Plaintiff to light work.  This is a
misstatement of the state agency examiners' opinions.  See R. 82–83 ("[Plaintiff] is limited to an RFC
that is significantly less than a full range of sedentary work."); R. 103 (answering "Sedentary" to a
question asking what about Plaintiff's maximum sustained work capability); R. 122 (concluding the
same).  However, this misstatement is not material for the purposes of our review.  "Sedentary work
requires an ability to stand and/or walk 'occasionally,' up to two hours per day."  Romero v. Astrue, 242
F. App'x 536, 540 (10th Cir. 2007) (citing 20 C.F.R. §§ 404.1567(a), 416.967(a) and SSR 96-9p).  Here,
the ALJ specifically rejected the state agency examiners' two-hour stand/walk limitation, and his
conclusion is supported by substantial evidence.  The ALJ plainly—but implicitly—rejected the state
agency examiners' opinion Plaintiff should be limited to sedentary work.

[14]      A separate set of state agency consultants opined on whether Plaintiff had a mental medically
determinable impairment.  However, Plaintiff does not challenge the ALJ's conclusions on this matter.

extremity sensory.  R. 437, 498–99.  The ALJ adequately articulated his consideration of the consistency factor.

As for supportability, though the ALJ does not actually use the word "support" in his analysis, it is clear to the Court the ALJ considered the supportability of the opinion.  The ALJ's citations to the state examiners' opinions and specific references to their review show the ALJ considered how much the state medical examiners' opinions were supported by objective medical evidence and explanations provided by the state medical examiners.  See 20 C.F.R. § 416.920c(c)(1).  The ALJ found the opinions unsupported since the examiners did not have the opportunity to examine the claimant themselves and their opinions were not based on a full review of the records.  In discussing these factors, the ALJ adequately addressed the supportability of the opinions.

Furthermore, the ALJ's conclusions are supported by substantial evidence.  Plaintiff has regularly shown normal sensory function and reflexes in examinations over several years.  See R. 371, 418, 504.  Additionally, extremity strength tests performed in late 2017 showed full strength in the lower extremities.  R. 538.  During the same examination, the straight leg raise test was performed that came out negative on both left and right sides.  Id.  Thus, substantial evidence supports the ALJ's conclusion Plaintiff could function beyond the limits of the state examiners opinions.  Plaintiff fails to show ALJ erred in considering the state examiners' opinions, and, therefore, no remand on this enumeration of error is necessary.

**V.      Whether the Unconstitutional Structure of the SSA Requires Remand**

Plaintiff asserts the Social Security Administration's ("SSA") structure is unconstitutional because the removal provision in 42 U.S.C. § 902(a)(3) insulated the Commissioner from removal by an accountable President.  Doc. 20 at 19.  Plaintiff argues

because the SSA's structure was unconstitutional, the Commissioner's final decision is constitutionally defective and remand is required.  Id. at 18.  Plaintiff contends the decision of the ALJ and Appeals Council is unconstitutional because Commissioner Saul's appointment on June 17, 2019, was unconstitutional.  Id. at 19.  Plaintiff argues the ALJ decided this case under Regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issues those rules, meaning the ALJ applied a "presumptively inaccurate" legal standard.  Id.  Plaintiff argues because the adjudicatory process was unconstitutional, Plaintiff's claim should be remanded to be heard by a new ALJ.  Doc. 26 at 3.

Defendant acknowledges the removal provision in § 902(a)(3) is likely unconstitutional but argues remand is not required.  Doc. 25 at 10.  First, Defendant argues no separation-of-powers concerns exist because the ALJ who denied Plaintiff's claim was not appointed by a Commissioner who was subject to the unconstitutional removal restriction.  Id.  Second, Defendant argues Plaintiff has not shown the unconstitutional removal restriction caused or affected the denial of his benefits, and, therefore, Plaintiff is not entitled to a new hearing.  Id.  Finally, Defendant argues Plaintiff is not entitled to a rehearing under the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential concerns.  Id. at 11.

For purposes of this Order, the Court assumes, without deciding, the SSA's structure was unconstitutional.[15]  The United States Supreme Court decisions in Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2205 (2020), and Collins v. Yellen, 141 S. Ct. 1761, 1786–87 (2021), strongly

---

[15]     See Memorandum Opinion for the Deputy Counsel to the President on the Constitutionality of the Commissioner of Social Security's Tenure Protection 45 Op. O.L.C. __ (July 8, 2021) (explaining the Office of Legal Counsel determined the statutory restriction on removing the Social Security Commissioner is unconstitutional).  Defendant agrees the SSA's structure likely violated the Constitution. Doc. 25 at 10.

suggest the restrictions in § 902(a)(3) on the President's ability to remove the SSA Commissioner were likely unconstitutional.  The Supreme Court in Collins also discussed a party's available remedies for retrospective relief when an officer was properly appointed, but the applicable statute unconstitutionally limited the President's authority to remove the officer. Collins, 141 at 1787.  In that situation, the Supreme Court concluded there was no reason to treat the actions taken by a properly appointed officer as void.  Id.; see also id. at n.23 ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the [officer] of the power to undertake the other responsibilities of his office, including implementing [actions].") (citing Seila Law, 140 S. Ct. at 2207–11).  The Supreme Court also explained a plaintiff may be entitled to relief if the plaintiff can demonstrate the unconstitutional removal provision caused the plaintiff some compensable harm.  See Collins, 141 S. Ct. at 1788– 89 (acknowledging shareholders could be entitled to retrospective relief because "it is still possible for an unconstitutional provision to inflict compensable harm").  As a result, Plaintiff in this case must prove the unconstitutional removal provision, § 902(a)(3), caused him some compensable harm, which requires a showing the case would have been decided differently if the President could have removed the SSA Commissioner.  See L.M. v. Comm'r of Soc. Sec., Civil Action No. 5:20-cv-304, 2021 WL 8268034, at *2 (M.D. Ga. Dec. 3, 2021) ("To receive retrospective relief, such as a rehearing before a new ALJ, an aggrieved plaintiff must establish how the unconstitutional removal provision caused him compensable harm . . . .  [H]e must be able to establish that his case would have been decided differently if the President could have removed the SSA Commissioner.").

Plaintiff argues harm is presumed based on the unconstitutional agency structure. Doc. 26 at 5.  This argument is contradicted by the Supreme Court's holdings in Seila Law and

Collins.  Plaintiff argues two cases, Carr v. Saul, 141 S. Ct. 1352 (2021), and Cirko ex rel. Cirko v. Comm'r of Soc. Sec., 948 F.3d 148, 151–54 (3d Cir. 2020), support his argument causation and harm should be presumed.  Doc. 26 at 5–6.  This argument is unavailing.  Carr did not address whether a presumption of harm existed at all.  Cirko, meanwhile, considered whether plaintiffs need to exhaust administrative remedies prior to challenging unconstitutional appointments.  Cirko, 948 F.3d at 152.  In the opinion, the Third Circuit Court of Appeals determined a presumption of harm did exist where an officer was unconstitutionally appointed; however, the Cirko court was clear this presumption was limited to appointment clause violations.  Id. at 154 ("An individual litigant need not show direct harm or prejudice caused by an Appointments Clause violation.").  Here, there is no challenge to the Commissioner's appointment under the Appointments Clause; the challenge here relates to the constitutionality of the removal provision in § 902(a)(3).  Thus, Cirko is inapplicable.

On the other hand, Seila Law and Collins are applicable and controlling.  In Seila Law and Collins, the Court rejected the argument retrospective relief is automatically available when an agency has an unconstitutional removal clause.  See also Lisa Y. v. Comm'r of Soc. Sec., 570 F. Supp. 3d 993, 1003 (W.D. Wash. Nov. 8, 2021) (explaining "both Seila Law and Collins held an unconstitutional removal clause does not automatically void agency action and mandate reversal"); Robinson v. Kijakazi, 1:20-cv-358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) ("[T]he Supreme Court held [in Collins] where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused the harm.").  Indeed, if harm were to be presumed in the context of an unconstitutional removal provision, there would have been no need for further proceedings upon remand in Collins.

Plaintiff fails to show how the unconstitutional removal clause harmed him in any way, other than vague allegations about of the Commissioner's effect on the disability adjudication process and a general lack of due process.  Doc. 26 at 6.  These vague and conclusory allegations are insufficient to show that the removal provision caused Plaintiff any compensable harm. See Lisa Y., 2021 WL 5177363, at *7; Robinson, 2021 WL 4998397, at *3 (rejecting a challenge based on the unconstitutional removal restriction because the plaintiff offered "no evidence showing a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); Boger v. Kijakazi, No. 1:20-CV-331, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021) (holding same); Amanda B. v. Comm'r, Soc. Sec. Admin., No. 3:20-CV-434, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) (rejecting plaintiff's argument for remand based on the unconstitutional removal provision because she did not allege "the SSA Commissioner took any action that is in any way related to the ALJ's decision" or the decision by the Appeals Council") (citations omitted); see also Brinkman v. Kijakazi, No. 2:21-CV-528, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) (finding a plaintiff has not demonstrated harm sufficient for standing where the plaintiff "has not alleged any facts or provided any evidence in any form suggesting that when the ALJ denied her claim for Social Security benefits, the then-SSA Commissioner played any role whatsoever in that decision").

In sum, the presumably unconstitutional removal clause in § 902(a)(3) does not automatically void the actions of the SSA or the Commissioner's final decision in this case. Plaintiff has not shown the removal clause harmed him in any way.  Indeed, Plaintiff has failed to show the removal provision is connected in any way to the ALJ's decision denying him benefits.  As a result, reversal and remand are not warranted.  This enumeration of error fails.

**CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision.

Additionally, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the

appropriate judgment of dismissal.

**SO ORDERED**, this 21st day of September, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA